23, 731 David Stanley v. Phelan et al. And I understand we have counsel for the appellant would like to reserve two minutes for rebuttal. Is that right? That's correct. Okay. Good morning. Stephen Bergstein for the plaintiff appellant. We have two primary issues here. First, we have a whether the series of adverse actions is enough to draw an inference of retaliatory intent and second, a separate reasonable accommodation denial over COVID. Let me first let me focus on the first series of arguments. We have about a dozen personnel actions to which the plaintiff was subjected over the course of about four to five years. And during that period of time, he engaged in protective activity four times. So under the standard of review for Rule 12, which we all know, the complaint asserts a plausible cause of action, both in terms of adverse actions and retaliatory intent. The adverse actions include negative performance reviews, undermining the plaintiff's authority with his subordinates, removing his duties, destroying his work orders, denying him positions. By the way, would you just clarify, I wasn't clear what that meant, destroying the work orders. Mechanically, is this something that he as a supervisor was putting in a request that certain work be done? I don't know, changing a light bulb somewhere, and then the work order. In other words, something he was proposing that work be done on, someone was destroying? The assertion on paragraph 61 is one of the defendants threw them in the garbage. No, no, no, I understand they were destroyed. But what do you mean his work orders? Work orders that were directed to him saying, hey, you, plaintiff, go do work? Or these are requests that he sent, he was submitting, saying I know of 16- The second. Repairs that need to be done in the building. The second. Put them in the system so that someone does it. Okay. The second. That's a slight clarification, I appreciate it. Denying him positions for which he was qualified and most glaringly denying him a reasonable accommodation over the workplace toxic particles from a construction project. So about a dozen adverse personnel actions over the course of- Can I ask why, whether or not the analysis with respect to the office condition is better suited as like an OSHA or something, a health claim as opposed to a retaliation claim? Does it make the analysis harder for us? I don't think so. It's still a reasonable accommodation claim based on his disability because of his- Okay, but a second ago you just said it was the retaliation. It's both. It's really both. It was the assertion in the complaint is that he requests this accommodation and they essentially denied it in retaliation for his having filed a lawsuit about a month or two earlier. So let me focus on that because it's even the district court took pause over that particular allegation. Although he did find it wasn't enough to show retaliatory intent. So plaintiff requests a relocation from his basement office and the director of environmental health and safety agreed with the plaintiff claiming and she directed his subordinates to relocate the plaintiff. They didn't do it. And one of the subordinates by the name of Bracco told plaintiff that he was going to see if plaintiff could get a disciplinary write up. This is paragraph 9293 because plaintiff's email came and angered him and proved plaintiff was being difficult. So here you have an adverse action in isolation and then you have an inference of retaliatory intent just on the basis of that one allegation. But then there's a chicken egg problem that I'm having and maybe you can help me clarify it. If they were going to move him, no matter what, causing an accommodation to be served, then how is putting him in the office that they moved him to without discrimination or retaliatory act? Are you saying the failure to move him a second time was the retaliatory act? The retaliatory act was he wasn't relocated at Cayman direction. But it was retaliatory because he sought the accommodation or it was retaliatory because he had been complaining of other things earlier. Both because he brought the lawsuit in September, right? And then he makes a reasonable accommodation request. They're both protected acts. Now, I get your point. You have a retaliatory act in response to two different acts of protected activity. I want to be very clear. You don't think putting him in the office was the retaliatory act. You think the retaliatory act was failing to move him when he was requested. Is that the argument? Putting him in the office, you mean a few years earlier when they put him in the basement? Well, that was 2014. So that was the first event in the complaint that's prior to the statute of limitations. But four years later, he's still in the basement. And they don't move him to a safer location in September 2017. Well, because he brought the lawsuit a month earlier. And the reasonable accommodation request angered Bracco, who told him this proves you're being difficult. So you have an adverse event in response to two acts of protected activity. Can you clarify why it's a reasonable accommodation request in the sense that it's related to his disability? As opposed to nobody would want to be in that basement. I assume the way you describe it, nobody would want to be there. So why is it somehow reasonable accommodation for his disability? Because his kidney condition made it more precarious for him to be working in the basement at that time. But even if the court doesn't think it's an accommodation for his disability, it's still retaliation for having brought the state division charge in July of 2017. This was a couple of months later. So either way, it's retaliation, whether it's because he has a disability or whether it's because he went to the state division complaining about prior acts of discrimination. And your theory of retaliation is not just that he was left down there, because obviously that's a continuing thing once he's down there, he's down there. It's that, remind me of the timeline in terms of the statute of limitations, that there's this director of environmental whatever that says he ought to be moved and then Brackos does not comply with that directive. Just remind me the dates. Right, he's originally placed in the basement in 2014. Okay, the statute of limitations really is May 31, 2015, because that's three years before the lawsuit. But then in 2017, now we're within the live period when the claims are actionable. Two months after he goes to the state division, he's got the toxic dust. He wants to be moved. They don't move him. And that's the adverse action. But hang on. So is he asked to be moved and Kamin says, is it Kamin? Is that the name of the person who says move him? What's the timing on that? Just remind me. September 25th, he makes the request. 2017. 2017. And then Kamin, subsequent to that, says, oh, yes, you should be moved, and then Bracko doesn't move him. Correct. But more broadly, that's enough, I think, for an adverse action and retaliation of discriminatory intent. But you have, as this court has said many times, a mosaic of retaliation is enough to show an adverse action. You can't just isolate each particular episode and say, nope, that's not enough. Nope, that's not enough. Small acts can be enough to dissuade somebody from speaking out again in the future. And that's really the crux of our argument here. That the district court did make reference to considering the allegations as a whole, but not quite the way this court wants district courts to do it in cases like Vega, Little John, the Bound case from last year. So, counsel, why don't we just wait. Let me just see if any of the other members of the panel has a question right now. Because if not, I think we'll turn to counsel for the appellee. Okay. All right. You've reserved a couple of minutes for rebuttal, so we'll see you shortly. Thank you. Thank you, your honors. And may it please the court. Cleland Wilson for the defendants. The complaint in this case is long and somewhat disjointed, but it does not state a claim for relief under any of the plaintiff's theories. I'm having a hard time hearing you, sir. Oh, I'm sorry. I apologize. This is better. Speaking more into the mic. Thank you. Sorry. We can talk about the construction complaint, your honor. I want to clarify something. My friend on the other side says that he was not moved from the construction zone. The complaint says that he was moved from the construction zone. That's page 31 of the joint appendix, paragraph 94 of the complaint. That's when he's moved to the conference room, but then he complains that his computer was not moved up with him? Correct, your honor. So that he couldn't do his work in the new space. That's his allegation, right? I take that to be his allegation. So the allegation isn't that he was made to work in the conference room. It wasn't that he was made to work in the basement. It was that he was made to work temporarily during construction in an alternative location without his particular computer. But he doesn't allege any facts suggesting that he required his computer to do all of his tasks. His tasks were those of a maintenance supervisor, physical laborers, physical repair people. It's not clear from the complaint that he required his personal computer to do that. He's working on a college campus. There are other computers on campus that he could have used to do whatever he needed to do with the computer. The fact that he wasn't set up with his own personal computer in the conference room is not a materially adverse employment action that's sufficient to support a retaliation claim. And so I think that disposes of that main basis for his Rehabilitation Act retaliation claim. And the rest of his case is about this alleged mosaic of, excuse me, the alleged mosaic of adverse actions. But none of those are sufficient. So if I'm following the part of your argument, I'm looking at the right page of the complaint, JA121. Am I looking in the right spot here? JA121 is the proposed third amended complaint. Oh, that's the proposed third. Which actually supports our argument further, contains more detail as to what the emails were. And it shows that Mr. Bracco, contrary to what my friend has said, Mr. Bracco didn't wait to refer him to the conference room. Later the same day, he returned the email and said, you can go to the conference room to work there, you're not required. That's the third amended complaint. The one that, that's the one we're not allowed to look at. It's not the one that's on offer. However, even in the second amended complaint, paragraph 94, it acknowledges that Bracco allowed him to relocate to the conference room. NIC 95 only says that he was not able. He says he was not able to move to this conference room because defendants refused to set up a computer there. But you're saying, putting aside the third amended complaint, that there's no allegation he needed a computer. Correct, Your Honor. There's no allegation to that effect. There's no allegation that he needed, more particularly, that he needed his personal computer as opposed to any of the other number of computers that would have been available to someone. Well, it doesn't, is there anything in the complaint that says there were other computers available? I'm not sure that there is anything to that effect. So if there's not, then we can't make an inference against the non-moving party to suppose that there are other computers out there. Well, I think it's his obligation to say that. But doesn't he, back on to paragraph 95, it says, or other equipment to permit plaintiff to work, right? I mean, that, I think most people would understand that as one would not add a clause like that if they could work without it. I mean, are you being a bit stingier than you need to be in order to prevail in terms of the reading? I don't think, if I'm being stingy, I apologize. I don't think that he's alleged, the bottom line is he has not alleged that this was more than a temporary and relatively insubstantial burden on his ability to do his work. It's not something that would dissuade someone from making a discrimination. But is there anything in his complaint, according to his allegations, that it was all that temporary? That he would have only been in the conference room for a week or something? Well, it's the nature of the construction project is it's temporary. Do you know how long they've been working on the elevators in this building? Fair enough. So I don't think that we're going to be necessarily ready to make inferences that construction projects are short and sweet. Sure you are. I will say, acknowledging that it's in the third amendment complaint, but in the third amendment complaint he said it lasted four months. Well, but as you pointed out, that was the one that the district court did not allow to be filed. I think you might even have, oddly, you might have had a stronger argument if the district court had let that file. Because there he says, he had to forego the use of his computer and instead accompany his staff on projects and physically sign off on work orders. So he seems to be alleging the third amendment complaint. He was able to do his work, just not by sitting in the conference room. But we're left with a second amendment complaint, which says, as Justice Perez pointed out, he... Or any other equipment to permit him to work. And the inference is, because they didn't give him equipment to permit him to work, he wasn't permitted to work. That's the most favorable inference to him. Again, maybe you win in summary judgment. I'm not sure that's a fair or reasonable inference to draw in his favor, given his job was, even setting aside the third amendment complaint, his job was supervision of laborers and maintenance workers. There's nothing in that job description. He doesn't allege that he needed the computer to do his work. With respect to the rest of his complaint, he's not focused much on the earlier actions. I will say that anything before about 2017, July of 2017, is outside the scope of the Rehabilitation Act claim, retaliation claim, because nothing prior to the DHR, the discrimination complaint, was protected activity under the Rehabilitation Act. So everything prior to that is out of the case. He tries to bring some earlier activity in based on his earlier FMLA leave that he took in 2014, but that leave does not constitute protected activity under the Rehabilitation Act. So anything before the discrimination complaint in 2017 is out of the case, and everything after that. There's no direct allegation of discriminatory or retaliatory intent, and so he's left to rely on this theory of temporal proximity, and nothing apart from— I'm just—I'm wondering, because—and I hadn't thought about this before, so you're going to have to be patient with me as I formulate the question. I mean, I read the second amendment complaint to suggest that this was a guy that just asserted a bunch of rights in a bunch of circumstances, and I think the mosaic theory leaves room to say that folks are kind of harboring a grudge over someone that claims they need help under FMLA or claims they need help under the Rehabilitation Act. Is there something about the Rehabilitation Act—I'm sorry. Is there something about the mosaic theory that doesn't permit us to think about the pastiche? Like, what was it—what was the mosaic that was causing the defendants to have an approach or an attitude to this person who they thought was a pain, you know, or was constantly overly asserting? I mean, that's how I read the argument, or that's how I understood the argument, just to not have to draw, like, a clean line to say just because this protected activity wasn't a protected activity under this Act doesn't mean that it wasn't part of what was inspiring or animating the reactions on the part of the defendant. Well, the critical thing here, Your Honor, is there's two different causes of action. There's the FMLA cause of action, which is not pursued, and he's only asserted that against the individual defendants. And as to the Rehabilitation Act claim, the earlier comments and the things that you're talking about prior to 2017 were not tied to protected conduct under the Rehabilitation Act. So your position is that, like, a mosaic theory needs to have the same kind of objections, right? It needs to be the same kind of protected activity. It cannot be just someone being—I mean, someone being animated because someone is asserting protected activity that's not the very specific protected activity that they're raising a claim for. He has to assert a claim under a particular statute, and here he's asserted a claim under the Rehabilitation Act, and he doesn't have—he can't rely on FMLA rights on the basis of— I mean, do you think that the defendants, when reacting, were thinking, oh, this is an FMLA claim, or oh, this is a Rehabilitation Act claim, or this is a civil rights claim, as opposed to saying, here's a guy who keeps asserting claims? I'm not sure. I know—I wouldn't speculate about what they were thinking. No, and just in terms of what's animating—I mean, the idea of retaliation is because somebody is asserting something and someone else is upset about it, right? Someone asserted something. They don't even have to be correct in order for it to be a retaliatory activity, right? Like, somebody could claim that they have a—someone could file a discrimination claim, a race discrimination claim, and be found to have not prevailed, but someone could still—the defendant could still lose on the retaliation claim. So why does the activity that he complains of have to be tied to the particular statute that they're ultimately suing on or before us if they don't even have to win it or be right? Well, they don't have to win it or be right, but they have to assert a claim under a particular statute. If the defendants aren't on notice of what rights you're asserting your claim under, they can't be held liable for retaliating for that. And so just take an example. I think Your Honor suggested with respect to the construction issue, another reason that claim fails as a reasonable accommodation claim is he doesn't assert in that email, I need accommodation because of my kidney ailment. He asserts, I want to move out of this uncomfortable office with this construction going on and allegedly hazardous chemicals. So he can't have a reasonable accommodation claim or retaliation claim there because nobody is on notice that he's asserting rights under the FMLA or other anti-discrimination statutes, excuse me, the Rehabilitation Act or other anti-discrimination statutes. And so it makes a difference what he's asserting. Well, it makes a difference whether or not someone knows that they're actually asserting a cognizable injury under a particular statute. Yeah, I see that. Okay. That's good. Thank you, Your Honor. If there are no further questions, we'll ask the court to refer them to the judge on dismissal. Thank you very much. Why don't we hear from counsel for the appellant. You have reserved two minutes of rebuttal. There were questions about what animated the retaliatory acts. Were they harboring a grudge? And the question is why. That's always the question in some of these cases. Why were they doing this? Why was there this steady stream of hostile personnel actions? Then we're getting into motive. And any time we get into motive, that's an issue that certainly can't be resolved under Rule 12. You can't even do that on summary judgment. You certainly couldn't do it under Rule 12. Prior to 2017, prior to the statute of limitations, you did have comments from a prior supervisor that sort of set the tone for everything that followed. Elmer Phelan made comments expressing frustration that plaintiff had been taking time off for his kidney transplant. So that carries into the statute of limitations. It may not be independently actionable, but it's relevant background information. I want to make one final point. What the district court got wrong on the construction episode, district court said it is implausible that CUNY would undertake the project in retaliation for plaintiff's protected activity. That's not the argument. The argument is not that they started this digital, this disabled access lift to spite the plaintiff. If it's that they spited the plaintiff when he requested the accommodation. And he did, the complaint does say he requested a reasonable accommodation. I want a suitable work area. I think that's enough under Rule 12 to show that he engaged in protected activity. So for these reasons, we ask this court to reverse the dismissal under Rule 12. Thank you. Thank you very much to both of you. We will take the case under advisement.